BL

**WO**

**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Piero A. Bugoni, ) | No. CV 04-1345-PHX-FJM (JJM) |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| Coffman, et al., ) | |
| ) | |
| Defendants. ) | |

Plaintiff Piero A. Bugoni brought this *pro se* 42 U.S.C. § 1983 action against Defendants James Coffman, Ernest Alcala, Dean Martinez, and John Mallaburn, alleging violations of his constitutional rights due to excessive force and his placement on a nutriloaf diet (Doc. #1).  Currently pending are Defendants Alcala and Martinez' Motion to Dismiss as unexhausted Plaintiff's claims regarding excessive force as to Alcala and one claim of excessive force as to Martinez; and all Defendants' Motion for Summary Judgment as to Plaintiff's remaining claims (Docs. ##32, 33).

**I. Background**

In his Complaint, Plaintiff alleged that his constitutional rights were violated as follows: (1) Plaintiff was subjected to excessive force when Alcala assaulted him on several occasions, (2) Plaintiff was subjected to excessive force when Martinez assaulted him on three different occasions, and (3) Defendants Alcala, Coffman, Mallaburn, and Martinez improperly placed him on the nutriloaf program without providing due process[1] (Doc. #1).

---

[1] Upon screening, the court dismissed Defendant Thompson and Plaintiff's property claim (Doc. #13).

The Court ordered an answer, and Defendants filed motions to dismiss and for summary judgment (Docs. ##13, 32, 33).

Initially, in his original Complaint, Plaintiff was not specific as to the incidents in which he was allegedly subjected to excessive force, merely indicating that on several occasions Alcala slammed his head against a wall, slammed him against a wall, and ordered other officers to slam him to the floor (Doc. #1). Plaintiff alleged that Martinez assaulted him on three different occasions; the first was witnessed and the second two were video taped (Id.). In addition, Martinez knocked him to the ground, forced his arm behind his back while restrained, attempted to break his wrist, and slammed his face against the wall in the elevator (Id.). The following facts were obtained mainly from Martinez and Alcala's affidavits, Plaintiff's grievances, and the Disciplinary Action Reports (DAR).

**A. Excessive Force - Martinez**

Plaintiff complained about three separate incidents in which he alleged that Martinez, a member of the Special Response Team, used excessive force against him. The first incident occurred on January 6, 2004, when Plaintiff's cell was being sprayed for bugs (Doc. #34, ex. A ¶ 3). Because inmates had to be removed from their cells, the detention officers would "cuff-up" the inmates (Id.). According to Martinez, Plaintiff refused to be "cuffed-up"; Plaintiff attested that he did not so refuse (Id.; Doc. #37, 39). As a result, several officers, including Martinez, entered the cell (Doc. #34, ex. A ¶ 3, attach A). Martinez had his tazer drawn and ordered Plaintiff to put his hands on the wall (Id. ex. A ¶ 3). Plaintiff obeyed, and was cuffed (Id.). When Plaintiff was returned to his cell, he was ordered to kneel and was then uncuffed (Id. ¶ 4). Martinez denied ever placing his knee in Plaintiff's back, and asserted that Plaintiff suffered no injuries (Id.). Plaintiff attested that he never refused to be cuffed-up, but merely asked why (Doc. #39). In response, Martinez became irate and "applied force," injuring him (Id.).

The second incident occurred after Plaintiff was taken out of his cell due to a confrontation between Plaintiff and Coffman (Doc. #34, ex. A ¶ 5). Plaintiff was placed in the day room, where he began screaming and yelling (Id.). When Martinez entered the day

1  room, Plaintiff stood up (Id.). Martinez ordered Plaintiff to sit down, and when Plaintiff
2  refused, Martinez "chaired him," or forced him to sit (Id.). Martinez admitted that he may
3  have grabbed Plaintiff, but attested that Plaintiff did not fall and suffered no injuries (Id.).

4        The third incident occurred on June 4, 2004, in the elevator (Doc. #34, ex. A ¶ 6).
5  Plaintiff's visitation was cut short due to a security override (Id.). Plaintiff was placed in the
6  elevator so that he could be returned to his cell when he began threatening the detention
7  officers and refused to get on the elevator (Id.). When Plaintiff was forced into the elevator,
8  he grabbed Martinez' arms and pinned him (Id. ¶ 7). Martinez ordered Plaintiff to release
9  him, and when Plaintiff refused, Martinez "swept his leg" (Id. ¶¶ 7-8). Plaintiff released
10 Martinez and fell, hitting his nose on the railing (Id. ¶ 8). Plaintiff suffered scratches and
11 slight bleeding, and his face hurt (Id. ex. A ¶ 8; ex. B). Plaintiff believed his nose was
12 broken, however, x-rays did not reveal a fracture (Id. ex. B).

13       Martinez attested that any force used against Plaintiff was reasonable, and the least
14 that was necessary to bring Plaintiff under control (Doc. #34, ex. A ¶ 2). Martinez also
15 attested that Plaintiff refused to obey verbal commands (Id.).

### B. Excessive Force - Alcala

17       Plaintiff also complained about several incidents in which he alleged that Alcala,
18 Commander of the Chain Gang, used excessive force against him. Alcala denied ever
19 throwing Plaintiff against any walls, but admitted that he had to "cuff-up" Plaintiff due to his
20 belligerence during a security walk (Doc. #34, ex. C ¶ 3). Alcala also acknowledged that on
21 one occasion when Plaintiff was being transferred, he refused to get on the floor to be
22 uncuffed (Id. ¶ 6). Plaintiff was "placed on the floor" and uncuffed, but was not injured (Id.).
23 Alcala also denied slamming Plaintiff's head into a table (Id. ¶ 3).

### C. Nutriloaf

25       The nutriloaf program was instituted "to promote the safety and security of jail
26 personnel" (Doc. #34, ex. A ¶ 10; ex. C ¶ 8; ex. E ¶ 5; ex. F ¶ 10). In particular, an inmate
27 is placed on the program if he (1) makes a specific threat to assault a staff member,
28 (2) assaults a staff member, (3) possesses contraband that can be used as a weapon,

(4) assaults another inmate with bodily fluids, or (5) attempts an escape or escapes (Id. ex. G ¶ 4). The program is considered administrative not punitive, and is designed to prevent inmates from using various utensils as weapons or to throw items at detention officers (Id. ex. A ¶ 12; ex. C ¶ 5; ex. E ¶ 5; ex. F ¶ 10; ex. G ¶ 5). The program also reduces detention officers' exposure to potentially dangerous inmates (Id. ex. G ¶ 6).

Kundavarm Reddy, a dietician and the food services manager, attested that inmates have a sedentary and lightly active lifestyle, and only require 2400 to 2500 calories per day (Doc. #34, ex. H ¶ 8). An inmate on the program gets two nutriloafs daily, along with water (Id. ¶ 9). A loaf consists of nonfat/skim dry milk, potatoes, carrots, raisins, cabbage, dehydrated beans, vegetable oil, onions, eggs, legumes, chili powder, flour, and bread dough (Id.). The two loafs are between 3200 to 3600 calories, and meet all the recommended dietary allowances (Id. ¶ 10). Reddy opined that the nutriloafs provide adequate nutrition (Id. ¶ 11).

There is no disciplinary report generated when an inmate is placed on the nutriloaf program (Doc. #34, ex. G ¶ 7). Consequently, an inmate is not entitled to a hearing or any grievance procedures to challenge his placement on the program (Id. F ¶ 9). Plaintiff was placed on the nutriloaf program on several occasions for threatening various detention officers, including Martinez and Alcala (Id. ex. A ¶ 11; ex. C ¶ 5). Plaintiff attested that he was on the program at least five times, the first time for a week, the second time for two weeks, the third time for three weeks, and the fourth and fifth times for four weeks (Doc. #39). Plaintiff attested that the fourth and fifth times were consecutive, resulting in him being on the loaf program for 60 straight days (Id.).

**II. Motion to Dismiss**

Martinez and Alcala filed a Motion to Dismiss, arguing that Plaintiff failed to exhaust several of his excessive force claims (Doc. #32). Initially, Defendants conceded that Plaintiff exhausted his claim that Martinez used excessive force on two occasions, and that his placement on the nutriloaf diet was improper (Id.). However, Martinez and Alcala argued that Plaintiff failed to file grievances regarding the alleged incidents between Alcala and

1 Plaintiff, and the elevator incident involving Martinez (Id.). Attached to the motion were (1) an affidavit of Sergeant Zelean Tademy, assigned to the Inmate Hearing Unit, (2) the Maricopa County Inmate Grievance Procedures, (3) the Maricopa County Rules and Regulations for Inmates, (4) a blank inmate grievance form, and (5) Plaintiff's grievances (Id.).

Plaintiff responded, arguing that (1) the Prison Litigation Reform Act (PLRA) is unconstitutional; (2) the PLRA does not apply to him because he is no longer a prisoner and has paid the filing fees; (3) he exhausted his administrative remedies; (4) he should be allowed to "retroactively" exhaust his remedies; (5) he was prevented from exhausting; (6) Defendants have waived this argument; and (7) dismissing his claims would be contrary to the PLRA because he will merely appeal the dismissal and/or re-file his action (Doc. #38). Attached to Plaintiff's response was his affidavit and copies of grievances (Doc. #39).

Defendants replied, arguing that Plaintiff failed to present credible evidence that he was thwarted in his attempts to exhaust, particularly since Plaintiff did exhaust several claims (Doc. #41). Attached to the reply were affidavits from Alcala and William Thornton (Id.).

### A. Legal Standard

Pursuant to 42 U.S.C. § 1997e(a) of the PLRA, a prisoner may not bring a lawsuit with respect to prison conditions under 42 U.S.C. § 1983 unless all available administrative remedies are exhausted. See Roles v. Maddox, 439 F.3d 1016, 1017 (9th Cir.), cert denied, 75 USLW 3171 (2006). A "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Moreover, a prisoner must first exhaust available administrative remedies *before* bringing an action. Vaden v. Summerhill, 449 F.3d 1047,1050 (9th Cir. 2006).

Exhaustion is mandated "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). It is required in all inmate suits regarding prison life. Porter v. Nussle, 534 U.S. 516, 523 (2002). To be "properly

- 5 -

1 2 3 exhausted," the prisoner "must complete the administrative review process in accordance with the applicable rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006).

4 5 6 7 8 9 10 11 Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The court considers exhaustion as a matter of abatement in an unenumerated Federal Rule of Civil Procedure 12(b) motion and "may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20. The court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988). The proper remedy when a "prisoner has not exhausted nonjudicial remedies . . . is dismissal of the claim without prejudice." Wyatt, 315 F.3d at 1120.

**B. Analysis**

13 14 15 16 17 18 19 20 21 22 23 24 25 26 Plaintiff's arguments that the PLRA's exhaustion requirement is not applicable to this action are unpersuasive. First, the exhaustion requirement of the PLRA is constitutional, and applies to pretrial detainees. See 42 U.S.C. § 1997e(h); Woodford, 126 S. Ct. at 2382 (providing that prisoners must exhaust all available remedies prior to bringing a § 1983 claim). Second, the release of the inmate or the payment of the filing fees does not void the exhaustion requirement. See 42 U.S.C. § 1997e(a) (providing that "[n]o action shall be brought with respect to prison conditions by . . . a prisoner . . . until such administrative remedies as are available are exhausted"). Third, Plaintiff may not "retroactively" exhaust, but must exhaust *before* filing suit. See Vaden, 449 F.3d at 1050. Fourth, Defendants did not waive the exhaustion argument, but raised it as an affirmative defense in their answer (Doc. #18). Finally, the fact that Plaintiff may appeal the court's decision or merely re-file his action is not contrary to the PLRA, which *requires* exhaustion *prior* to filing a suit, and requires the court to dismiss unexhausted claims, even if the plaintiff has exhausted while the action is pending. See Vaden, 449 F.3d at 1050.

27 28 Plaintiff also alleged that because he was prevented from filing grievances, he thereby exhausted his remedies. An inmate should seek to resolve a conflict through the Maricopa

- 6 -

1 County Jail System's Inmate Grievance Procedures. An inmate who wishes to file a
2 grievance will be provided a Grievance Form upon request, and must submit the form to a
3 detention officer. The unresolved grievance is forwarded to the shift Supervisor, and then
4 to the Hearing Officer. If the Hearing Officer is unable to resolve the grievance, the inmate
5 may appeal his decision to the jail commander, whose decision may be appealed to an
6 External Referee. The External Referee's decision is final (Doc. #32, ex. A).

7 Tademy attested that Plaintiff submitted eight grievances, but only appealed his
8 grievances regarding the loaf diet and his allegations of excessive force against Martinez on
9 two occasions: (1) in the day room when Plaintiff refused to remain seated; and (2) when
10 Plaintiff was removed from his cell while it was being sprayed for bugs (Id., attached
11 affidavit). Copies of Plaintiff's grievances support Tademy's affidavit (Id., ex. E).

12 In response, Plaintiff attested that Thornton threw away at least one of his grievance
13 forms based on Alcala's orders (Doc. #39). In reply, Alcala attested that he never denied
14 forms to any inmate and he never saw any grievances filed by Plaintiff (Doc. #41, ex. A).
15 Thornton attested that he was never instructed to destroy a grievance, never destroyed
16 grievances, and never saw Alcala destroy or dispose of grievances (Doc. #41, ex. B).

17 Alcala and Martinez demonstrated the existence of a grievance system, to which
18 Plaintiff failed to fully avail himself as to (1) any claims that Alcala used excessive force, or
19 (2) Plaintiff's claim that Martinez used excessive force in the elevator. Plaintiff attempts to
20 demonstrate that he was prevented from exhausting by asserting that on a single occasion
21 Alcala and Thornton disposed of an inmate grievance. Alcala and Thornton deny such
22 actions. More importantly, Plaintiff cannot demonstrate that any alleged actions on a single
23 occasion caused him to believe that he had no available remedies. See Brown v. Valoff, 422
24 F.3d 926, 934-35 (9th Cir. 2005) (providing that a prisoner must continue to pursue
25 institutional remedies until "he has either received all 'available' remedies at an intermediate
26 level of review or been reliably informed by an administrator that no remedies are
27 available"). Plaintiff had 60 days from the date of the incident to grieve the use of excessive
28 force. Even if two officers denied Plaintiff access to the process on a single occasion,

- 7 -

1 Plaintiff was aware of the process and had demonstrated his ability to pursue it to through
2 to an External Appeal. Thus, Plaintiff has failed to demonstrate that he was denied
3 administrative remedies for his claims. Accordingly, Alcala and Martinez' Motion to
4 Dismiss will be granted. Plaintiff's claims of excessive force on the part of Alcala and
5 excessive force by Martinez, with the exception of the following two occasions, will be
6 dismissed without prejudice.

7 The court now turns to Plaintiff's claims that (1) Martinez used excessive force during
8 Plaintiff's removal and return to a cell while the cell was being sprayed, (2) Martinez used
9 excessive force against Plaintiff in the day room, and (3) Plaintiff was improperly placed on
10 the nutriloaf program.

11 **III. Motion for Summary Judgment**

12 Defendants moved for summary judgment, arguing that (1) Plaintiff was not subjected
13 to excessive force, (2) the nutriloaf diet was administrative and thus did not trigger the
14 Fourteenth Amendment, (3) the nutriloaf was nutritious, and (4) Defendants were entitled to
15 qualified immunity (Doc. #33). Attached to the motion were affidavits from Defendants
16 Martinez, Alcala, Coffman, and Mallaburn; affidavits from Lieutenant Doris Culhane,
17 Detention Officer Nick Larkin, and Reddy; Plaintiff's medical records and discipline records;
18 and nutritional information (Doc. #34).

19 Plaintiff responded, arguing that he is unable to sufficiently defend the case because
20 he is being denied information (Doc. #37). He contended that Defendants are denying him
21 videotaped recordings of the assaults, and he is unable to contact various witnesses because
22 his probation prevents him from associating with them (Id.). Plaintiff further maintained that
23 Defendants have destroyed the video tapes (Id.). Plaintiff requested that the Court deny the
24 motions, or grant him a continuance (Id.).

25 "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions,
26 answers to interrogatories, and admissions on file, together with the affidavits, if any, show
27 that there is no genuine issue as to any material fact and that the moving party is entitled to
28 a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

- 8 -

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

**A. Excessive Force**

Initially, Plaintiff asserted that he cannot sufficiently defend against summary judgment because he is being denied evidence (Doc. #37). In particular, he requested video tapes of the incidents, and he was informed he needed a subpoena (Doc. #39). This case has been pending for more than two years, and Plaintiff has offered nothing to demonstrate the importance of the video tapes or that such tapes would affect the court's decision. Plaintiff's request for a continuance will be denied.

Jail personnel are prevented by the Fourteenth Amendment from using excessive force against a pre-trial detainee. Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003). The court evaluates claims of excessive force under the Fourth Amendment's objective reasonableness standard. Id. "'[T]he "reasonableness" inquiry in an excessive force case is an objective one; the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Id. (quoting Graham v. Conner, 490 U.S. 386, 397 (1989)). "In considering an excessive force claim, [the court] balance[s] 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake.'" Id. Summary judgments are granted sparingly on claims of excessive force. Id. at 415-16.

Based on the evidence, a reasonable jury could not conclude that Martinez used excessive force against Plaintiff. The evidence, including Plaintiff's own statements, demonstrates that Plaintiff was aggressive and confrontational. Plaintiff's medical records reflect that he was in the infirmary on multiple occasions due to complaints of injuries resulting from alleged excessive force from various detention officers (Doc. #34, ex. B). During several medical examinations, Plaintiff was uncooperative and stated his desire to get into a fight with the detention officers (Id.). Alcala testified that Plaintiff threatened to kill officers on at least three different occasions, and threatened to "kick Alcala's ass" (Id. ex. C ¶ 7).

Moreover, in responding to a discipline report, Plaintiff admitted that he informed Martinez that Plaintiff would "take him out," but argued that it could mean that Plaintiff intended to get Martinez fired or to take Martinez "to his favorite gay bar to meet his friends" (Doc. #34, ex. A, attach B). Culhane, Administrative Lieutenant in the Criminal Justice Services Bureau, conducted a document review and opined that the force used by Martinez was the reasonable amount necessary to gain control of Plaintiff due to his aggressive behavior (Id. ex. D ¶¶ 2, 7). Culhane opined that Plaintiff was not subjected to excessive force (Id. ¶ 8).

Plaintiff believes that his statements to the officers were not threats, merely "opinions" (Doc. #39). Despite Plaintiff's beliefs, no jury could reasonably find that his actions are not reasonably considered by the officers to be threatening and therefore not constitutionally protected. "The government has 'legitimate interests that stem from its need to manage the facility in which the individual is detained.'" Redman v. County of San Diego, 942 F.2d 1435, 1440 (9th Cir. 1991). "'[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.'" Id. at 1441 (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)). The jail has an interest in preserving internal order, thus, officers may punish an inmate for threatening them or seeking to engage them in confrontations, and may require them to sit or stand at any given time. Martinez

1 required Plaintiff to leave his cell in cuffs, and required him to kneel when removing his
2 cuffs. Further, Martinez "chaired" Plaintiff when, after yelling and screaming, Plaintiff stood
3 up and refused to take his seat. No reasonable jury could conclude that Martinez was not
4 within his authority to prevent an agitated inmate from being in a position where Martinez
5 would have to defend himself, and which might result in other inmates becoming security
6 problems.

7 In addition, Plaintiff has presented no specific evidence regarding the alleged
8 confrontation with Martinez when his cell was being sprayed for bugs. Plaintiff stated that
9 Martinez "applied force" when removing him from his cell so that it could be sprayed (Doc.
10 #39). That statement is insufficient for a reasonable jury to find that Martinez used excessive
11 force. "Applied force" does not identify the amount or type of force used. Plaintiff provides
12 only conclusory statements, which are insufficient to defeat summary judgment. See Galen
13 v. County of Los Angeles, 2006 WL 3198261, at *3 (9th Cir. Nov. 7, 2006) (providing that
14 "[b]ald assertions that genuine issues of material fact exist are insufficient").

15 Plaintiff does provide greater detail about the day room incident. Plaintiff alleged that
16 after he was dragged into the day room, Martinez wrenched his hand behind his back because
17 Plaintiff would not sit down (Id.). The more Plaintiff yelled in pain, the greater force
18 Martinez exerted (Id.). However, Plaintiff does not allege or demonstrate that he complied
19 with Martinez' order to sit. In fact, Plaintiff appears to indicate that he did not comply
20 because he "has a constitutional right not to sit" (Doc. #39). In addition, Plaintiff alleged that
21 Martinez exerted "greater force." But there is no indication what "greater force" means, and
22 Plaintiff's medical records do not establish that Plaintiff was injured by any "force" applied.
23 Thus, because it is unclear to what "applied force" or "greater force" refers, Plaintiff has not
24 demonstrated that he can sustain an element of his offense.

25 In sum, Defendants' Motion for Summary Judgment as to Plaintiff's excessive force
26 claim will be granted. Based on his own admissions, Plaintiff was aggressive and
27 confrontational, and often refused to follow simple orders of detention officers. Plaintiff
28 maintains that he was simply asking questions or expressing his opinion. However,

Plaintiff's statements and actions represented a security threat that is not constitutionally protected. Further, Martinez exercised appropriate force based on Plaintiff's response in the cell and his refusal to sit in the day room.

### B. Nutriloaf

"[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell, 441 U.S. at 536. "There are, however, limits on the extent to which pretrial detainees may claim that they are being punished in violation of the fourteenth amendment. The government has 'legitimate interests that stem from its need to manage the facility in which the individual is detained.'" Redman, 942 F.2d at 1440.

Plaintiff maintained that the loaf diet was punitive because he was on it for an extended amount of time (Doc. #37). At one point, Plaintiff was on the loaf program for up to 60 consecutive days (Doc. #37). Plaintiff also complained about the disciplinary sanctions he was on while he was subject to the loaf program (Doc. #39). Coffman attested that Plaintiff was placed on the program due to threatening behavior and insolence (Doc. #34, ex. E. ¶ 2).

Based on the summary judgment evidence, the nutriloaf program is not a punishment, but was instituted to ensure the safety and security of the facility. Plaintiff was placed on the nutriloaf program because he posed a threat to the safety of the detention officers. The program ensured that Plaintiff could not use any utensils as weapons, and reduced the contact between Plaintiff and the detention officers. Plaintiff admitted that he frequently threatened detention officers, claiming that he was merely exercising his constitutional rights. Further, the placement onto the program does not carry any further negative consequences and no disciplinary report is created. Despite Plaintiff's claims to the contrary, his placement on the nutriloaf program was not punishment. To the extent Plaintiff complains about disciplinary sanctions he received in addition to the program, those allegations are not part of the instant action.

Additionally, the nutriloaf contains all the nutrients necessary for an inmate; the only complaint is that it is not appetizing. The jail's failure to provide appetizing meals is not a constitutional violation, and Plaintiff cannot show that he was injured by being placed on the nutriloaf diet. See LeMaire v. Maas, 12 F.3d 1444, 1456 (9th Cir. 1993) (providing that "[t]he Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing"). Thus, Defendants' Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1) Plaintiff's request for a continuance contained within his response (Doc. #37) is **denied**.

(2) Defendants Alcala and Martinez' Motion to Dismiss (Doc. #32) will be **granted.** Plaintiff's claims that his constitutional rights were violated due to excessive force by Alcala and excessive force by Martinez, except for two occasions, are **dismissed** without prejudice for lack of exhaustion

(3) Defendants' Motion for Summary Judgment is **granted** (doc. #33). Plaintiff's remaining claims are dismissed with prejudice.

(4) All other pending motions are **denied as moot**.

(5) The Clerk of Court shall enter a judgment of dismissal accordingly.

DATED this 15th day of November, 2006.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge